## WALKER *v.* STATE OF INDIANA.

[No. 30,328. Filed March 11, 1965. Rehearing denied
April 19, 1965.]

*George E. Martz* and *Jerry M. Burton,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *David S. Wedding,* Deputy Attorney General, for appellee.

ARTERBURN, C. J.—Following the return of a jury's verdict of guilty, the appellant, John W. Walker, Jr., appeals from a conviction of accessory after the fact of second degree murder and a sentence of life imprisonment rendered by the Marion Criminal Court, Di-

vision One, on June 20, 1962. The appellant relies upon
the overruling of the motion for a new trial as error on
appeal. A number of errors are alleged, and we take
them up in the order assigned.

It is first argued that the evidence is not sufficient
to sustain the verdict. This is a companion case to
*Callahan* v. *State* (1964), 246 Ind. 65, 201 N. E. 2d 338,
wherein Callahan was convicted of murder in the first
degree as a result of shooting down an officer who at-
tempted to interrogate him.

The evidence shows that the appellant in this case,
with Ralph E. DuBois and Michael T. Callahan, had
gone back to a tavern to pick up some tools which they
had used to break into the place. They were in the front
seat of the car when the deputy sheriff pulled up in his
car, with the red light flashing, and ordered the three
out of their car. At that time Callahan ran up to the
car of Edward G. Byrne, the deputy sheriff, and shot
him three or four times. The appellant stated: "I don't
know exactly how many times, but at least three times."
Callahan was found guilty of murder in the first de-
gree. The appellant's statement with reference to the
killing was admitted in evidence without objection. The
statute [Burns' Ind. Stat. Anno. §9-103 (1956 Repl.)]
in this case provides:

> "Every person not standing in the relation of
> husband or wife, parent or child, to any person
> guilty of any felony, who shall, after the commis-
> ion of such crime, harbor, conceal or assist such
> offender, with intent that he shall escape from de-
> tection, capture, arrest or punishment, shall be
> deemed an accessory after the fact, and may be
> charged, indicted, tried, convicted and punished,
> though the principal be neither charged, indicted,
> tried nor convicted; and, on such conviction, he
> shall suffer the same punishment and penalties as
> are prescribed by law for the punishment of the
> principal. But in such charge the offense com-
> mitted by the principal offender shall be stated,

and it shall therein be charged that the accessory did so harbor, conceal or assist such offender, with intent that he should escape detection, arrest, capture or punishment. [Acts 1905, ch. 169, §226, p. 584; 1935, ch. 124, §1, p. 465.]"

One of the principal contentions made as to the insufficiency of the evidence is that there was no proof that the appellant did "after the commission of ■ such crime, harbor, conceal or assist such offender with intent that he shall escape from detection, capture, arrest or punishment, . . .."

A review of the evidence does show that after the shooting of the deputy sheriff by Callahan, the appellant aided "in hiding the burglary tools under a board under the back porch of DuBois' house." Appellant also admitted that he assisted Callahan in "ditching" Callahan's automobile.

Appellant further admitted that he drove Callahan to a phone booth so Callahan could make a phone call and that he gave Callahan $15.00 since Callahan was out of money to buy gasoline, etc. From this evidence, logical inferences could be drawn by the jury that appellant assisted Callahan in attempting to escape arrest, capture and detection.

Appellant, however, claims that his actions were not voluntary, but that he was under fear that Callahan would turn on him and kill him or cause him ■■ trouble thereafter. The evidence shows that Callahan lost his gun after the shooting of the deputy sheriff and actually had no gun, and made a search through the automobiles in order to get a gun, but never found any. Appellant, however, states that he did not know for certain that Callahan was without a weapon. This again is a question for the jury to determine. The evidence further shows that appellant and Callahan were driving separate cars after they left the scene of the

killing and that appellant followed Callahan. Appellant further insists that he did not know that the deputy was killed or that Callahan had committed a murder. In prosecutions for accessory after the fact, the State need only show that the accessory had good reasons to believe that the crime had been committed by the principal.

" . . . The triers of the fact are not required to accept the defendant's story where his credibility has been impeached or where the evidence leads them reasonably to a contrary conclusion." *Schweigel* v. *State* (1964), 245 Ind. 6, 195 N. E. 2d 848, 850; 22 C.J.S. Criminal Law §96, P. 276; *Roberson* v. *State* (1943), 69 Ga. App. 541, 26 S. E. 2d 142; *Clark* v. *State* (1953), 159 Tex. Cr. Rep. 187, 261 S. W. 2d 339.

Appellant John W. Walker took the stand to explain his defense. He revealed a considerable criminal record dating back for a number of years. The jury had a right to determine the credibility of the appellant as a witness and to believe or not believe any part or all of his testimony. *Harrison* v. *State* (1964), 245 Ind. 336, 197 N. E. 2d 770; *Wells* v. *State* (1964), 245 Ind. 183, 197 N. E. 2d 301.

We find the evidence sufficient to support the jury's verdict in the particular presented above.

It is next argued that the verdict is contrary to law because although the principal was found guilty of murder in the first degree, the appellant here was found guilty of being an accessory after the fact to second degree murder. The crux of the instant crime of the principal is murder or homicide. The second degree is an included offense of first degree murder. It has been stated that at common law accessories "must be convicted of a felony of the same species as the principal." 1 Chitty, Criminal Law 272 (4th American Ed. 1841).

We further point out that under the statute [Burns' Ind. Stat. Anno. §9-103 (1956 Repl.)] the accessory may be tried before the principal. This being true, when the principal's exact degree of guilt has not yet been determined, to hold otherwise would be illogical and unworkable in criminal procedure. Finally, the appellant waived any consideration on this point in failing to make any objections to the court's instructions regarding the principal crime of which the accessory could be found guilty. *Pacelli* v. *State* (1929), 201 Ind. 455, 166 N. E. 649; *Cosilito* v. *State* (1926), 197 Ind. 419, 151 N. E. 129; 9 I. L. E. Criminal Law §604, p. 98.

The argument is presented that the verdict is contrary to law because the undisputed evidence is that the appellant was present at the time of the commission of the principal crime of which he is charged as an accessory, and that an accessory to a crime is one who is not present at its commission. We feel that this is not a sound but purely technical distinction. Some old English law from Blackstone's Commentaries is quoted as stating:

"An *accessory* is he who is not the chief actor in the offense, nor present at its performance, but is some way concerned therein, either *before* or *after* the fact committed." 4 Blackstone's Commentaries 35 (Tucker Ed. 1803).

To us this appears to be language loosely used. 1 Bishop, Criminal Law, §663 (9th Ed. 1923), expresses the idea more accurately when it says: "An accessory is one who participates in a felony too remotely to be deemed a principal."

It is stated in Perkins on Criminal Law at page 580:

" . . . On the other hand, absence at the time of perpetration is not essential in the case of an accessory after the fact. For example, one who was present at the time a murder was committed, without abetting the felony in any way, but who there-

after, with guilty knowledge, assisted in concealing the evidence of the crime in order to protect the principal from prosecution, was guilty as an accessory after the fact."

It has been held that one may be present at the time of the commission of a murder and not participate therein, yet thereafter aid in the escape or concealment of the killer, and the statute as to accessories after the fact is applicable. We feel this is a sensible and proper interpretation. *Smith* v. *United States* (1962), 306 F. 2d 286; *White et al.* v. *The People* (1876), 81 Ill. 333.

The language cited by the appellant to the contrary is language which we feel is not accurately used in the cases cited and that particular point was not in issue therein.

It is next stated that appellant's motion for a mistrial should have been granted, based upon what is claimed the misconduct of the prosecuting attorney and asking alleged improper questions of the appellant when he was on the stand. The testimony, as set forth in appellant's brief, is as follows:

"Q.   Now, Mr. Walker, do you know a person by the name of Sam Gregg?
"MR. MARTZ:   To which we'll object—that goes outside the scope of Direct Examination.
"THE COURT:   Well he may be laying the foundation for something Mr. Martz. On that basis I'll allow it. Overruled.
"A.   Yes sir I know a person by the name of Sammy Gregg.

.   .   .

"Q.   Were you with him on occasions other than at the Tailor Shop?
"A.   Yes, I —
"MR. MARTZ:   I'm going to object to the question unless Mr. Thomason can specify what other times he's talking about.
"THE COURT:   Overruled—it's proper.

"Q. You said yes?

"A. Yes.

. . .

"Q. Uh huh, now in this combination of Callahan, Walker and DuBois, you were known as the chop man weren't you?

"MR. MARTZ: To which I'll object Your Honor. The prosecutor is merely asking questions in an attempt to prejudice the Jurors.

"THE COURT: I'll sustain that objection.

. . .

"Q. Are you acquainted with a person by the name of McCrackin?

"A. Yes sir I am.

"Q. And where do—do you know their first name?

"A. Yes I do.

"Q. Will you state it please?

"A. Edward and Grace McCrackin.

"MR. MARTZ: Your Honor, I'm going to object and move that it be stricken on the grounds that this was certainly not covered on Direct Examination.

"MR. THOMASON: Your Honor, I have considerable latitude in testing the credibility of this witness.

"THE COURT: Mr. Thomason has the right to lay a foundation—he was about to there—I presume it'll be tied up later possibly. Overruled.

"Q. And where does this person live?

"A. They live at R. R. 9 box 405.

. . .

"Q. . . . Now, on or about, uh, January the 30th, nineteen and sixty one, uh, was their home burglarized?

"MR. MARTZ: To which I'll object Your Honor. It's calling for an answer not—or outside the scope of the Direct Examination and has nothing to do with the case before the Court.

"THE COURT: I'll sustain that objection.

"MR. MARTZ: Your Honor may I approach the bench?

"THE COURT: What's the problem Mr. Martz. We can all hear you.

MR. MARTZ: I want to make a Motion.

"THE COURT: Do you want the Jury, uh —

"MR. MARTZ INTERPOSING. I want the Jury excused yes sir.

"THE COURT: All right. The jury may step aside. We have a motion before the Court. (At this time the Jury left the Court Room)

"MR. MARTZ: Your Honor the Defendant is going to make a Motion for a Mistrial based on improper questions by the prosecutor. He knows he is delving into matters that has nothing to do with this and he's attempting to prejudice the minds of the Jury unduly on matters not a part of this lawsuit.

"MR. THOMASON: May it please the Court the position the State has in this matter is that, of course, we may ask about former convictions, but we may also ask of other acts which go to test the credibility of this witness and that fact is established in the case of Tosser vs. State 200 Indiana 156. There is nothing improper about the questions that have been asked. We may go into, uh, all sorts of collateral matters, uh, to test this witness' credibility—to test his memory and, uh, certainly it does have a bearing upon this case—it goes as to, uh, the credibility of this witness.

"THE COURT: Oh, there's nothing wrong with your statement of law. It's, uh, within the discretion of the Court subject to an abuse of discretion and I think I've ruled when I thought that, uh, it was proper I overruled the objection and when I thought it wasn't I sustained the objection. I find no basis, uh, for a Mistrial. The mere asking of questions, while as a practical matter there's considerable argument over whether or not it creates prejudice, but I presume the Jury follows the Court's instructions when they're instructed to ignore the questions that are not answered Mr. Martz.

"MR. MARTZ: Yes sir. I would ask the Court to instruct the prosecutor to stay within the, uh, proper limits in asking questions and quit bringing up matters which are not a part of this trial.

"THE COURT: I can't pre-judge the prosecu-

tor's questions, uh, because we don't know whether it's proper or whether it's not until it's asked, uh, so I'll have to overrule your Motion for a Mistrial. We'll proceed. Next question.

"Q. Mr. Walker, uh, calling your attention to on or about, uh, April the 19th, 1961, did you have a conversation with, uh, Officer Linehan in reference to the, uh, McCrackin home burglary?

"MR. MARTZ: To which we'll object Your Honor. Again, it goes for information outside the scope of this, uh, particular case. The prosecutor has already asked a similar question which the Court has sustained.

"THE COURT: I'll sustain the objection."

On checking the transcript, this testimony is not in the proper order nor does it show the omissions. Nevertheless, it should be noted that the defendant was under cross-examination and the questions went to the previous criminal activity or associations of the defendant. This was a proper matter for cross-examination. It appears the court sustained the defense objections for the most part, and there was no admission of evidence prejudicial to the defendant. We have said:

"When the defendant takes the stand as a witness, he is subject to cross-examination as any other witness, and he may be asked questions concerning any fact tending to impair his credibility as a witness by showing his interest, bias, ignorance, motives or that he is depraved in character. All this may be shown on cross-examination, but the extent to which this may be carried is within the sound discretion of the court." *Tosser* v. *State* (1928), 200 Ind. 156, 160, 162 N. E. 49, 51.

Finally we point out that the court, in instructions 28 and 29, informed the jury that they should disregard all questions and answers to which objections were sustained by the court. *Temple* v. *State* (1964), 245 Ind. 21, 195 N. E. 2d 850.

There was no motion to withdraw the submission of

the case from the jury and a denial of such motion, nor were there any requests that the court instruct the jury to disregard the remarks. Under the circumstances, the sustaining of a motion for a mistrial would have been unwarranted without a ruling upon the preliminary motions, which would give the court an opportunity to correct error if possible. *Shneider* v. *State* (1942), 220 Ind. 28, 40 N. E. 2d 322; *Siberry* v. *The State* (1892), 133 Ind. 677, 33 N. E. 681. Under the circumstances, we find no error committed by the trial court.

The appellant further asserts that the trial court erred in permitting a certified copy of the judgment of conviction for murder in the case of *Callahan* v. *State* (1964), 246 Ind. 65, 201 N. E. 2d 338, to be placed in evidence.

It is difficult for us to conceive of a more proper way of proving the conviction of one of a crime than the judicial decree itself. Without question, it is the best evidence and it is well established that the record of conviction of the principal in a trial of an accessory is proper, if not a necessity, when the principal is tried first. 22 C. J. S. Criminal Law §105b, p. 294; *Wells* v. *State* (1942), 194 Ga. 70, 20 S. E. 2d 580; *Heyen* v. *State* (1926), 114 Neb. 783, 210 N. W. 165; *The State* v. *Mosley* (1884), 31 Kans. 355, 2 P. 782.; *Henry* v. *State of Florida* (1921), 81 Fla. 763, 89 So. 136.

The appellant further claims error in the refusal of the court to give instructions numbered 8 and 9, which told the jury that the State must prove that Callahan was a person of sound mind beyond a reasonable doubt at the time he committed the murder of which the appellant is charged as an accessory after the fact. In other words, the appellant sought to raise the question of the sanity or insanity of Callahan in the case in which he had previously been convicted,

and retry that case in the present case. The guilt or innocence of Callahan has been adjudicated. A final judgment cannot be reopened, reconsidered and readjudicated in a case collateral thereto. Callahan's sanity was determined in the case of *Callahan* v. *State* (1964), 246 Ind. 65, 201 N. E. 2d 338. At common law, an accessory could not be tried until after the principal had been tried and convicted, because of an inconsistency which might result if the accessory were convicted first and the principal acquitted thereafter. It follows that whether there was a conviction of the principal or not, was determinative of whether there could have been an accessory before or after the fact. This logic is borne out in the case of *McCarty* v. *The State* (1873), 44 Ind. 214, 15 Am. Rep. 232, where, under the statute then in force, an accessory could be tried before the principal was indicted or convicted. In that case, after the accessory was convicted, but before sentence was passed on him, the principal was tried and acquitted, and the court held that the accessory was entitled to be discharged. The State in that case could not attack the judgment of acquittal collaterally in the case against the accessory. It follows, likewise, it cannot be attacked collaterally here.

We find the court committed no error in refusing to go into the issue of the guilt of Callahan, the principal, which has previously been adjudicated by his trial.

The appellant claims error in the refusal of the court to give the following instruction:

"Where one is confronted with a sudden emergency, without sufficient time to determine with certainty the best course to pursue, he is not held for the same accuracy of judgment as would be required of him if he had had time for deliberation."

This might be a proper instruction in some civil action, but has no place in a criminal case where the law fixes

the conduct of a defendant, coupled with certain mental intent. Some portions of this instruction might be proper in a case of self-defense, but no issue of that sort was involved in this case. In our opinion, the instruction would confuse the jury and serve no legal purpose. The appellant offers no authority in support of such an instruction.

The appellant contends that the court erred in refusing to give its instruction No. 18, which in substance told the jury that the defendant would not be ■ guilty, even though he may in some manner have harbored, concealed or assisted Michael Callahan, if such actions "were not entirely voluntary and were prompted by fear of said Michael Callahan, . . ." (Our emphasis). The underlined words in the above instruction make it defective. The appellant's actions were either voluntary or not voluntary, and the law knows of no half-way hazy line between the two conditions. The instruction, as tendered, was confusing, and the court properly refused the same.

The appellant further contends that the court abused its discretion in allowing the jury to deliberate fourteen hours and thirteen minutes. The record shows ■ that after the jury had retired, they reappeared and requested the court to reread the instructions, and the court did so and the jury again retired to deliberate. When the jury reported they had reached a verdict, it was returned in open court and the jury was polled. There is no record of the amount of time that elapsed during the deliberation. The record is silent as to any objections by the appellant as to the length of time the jury was permitted to deliberate. The length of deliberation of a jury is largely within the discretion of a trial court. There is no showing of any abuse in this case. For the reasons stated, we find no error. *Messenger* v. *State* (1898), 152 Ind. 227, 52 N. E. 147.

The judgment of the trial court is affirmed.

Landis and Achor, JJ., concur.

Jackson, J., dissents.

Myers, J., not participating.

NOTE.—Reported in 204 N. E. 2d 850.