**Ruby JOHNSON, Defendant-Appellant,**

**v.**

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–580A148.**

Court of Appeals of Indiana,
Third District.

July 16, 1981.

Rehearing Denied Aug. 26, 1981.

Linley E. Pearson, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

HOFFMAN, Presiding Judge.

Ruby Johnson was charged with two counts of first-degree murder and convicted after a trial by jury of two counts of involuntary manslaughter. Johnson raises the following issues on appeal:

(1) whether the trial court erred in granting the State's motion in limine;

(2) whether the verdict is contrary to law in that the evidence is insufficient to sustain the verdict and also that the verdict is inconsistent with other verdicts rendered in the same trial; and

(3) whether the trial court erred in denying Johnson's motion for severance.

Seven persons were initially indicted for the murders of Bobby Fisher and Percy McFarland. Ruby Johnson, Gilda Smith, Johnny Hodge and Darrell Jung were tried in a consolidated trial. James Herrin, Darrell Priest and Jackie Hicks were severed from the present case.

The State's chief witness was Jackie Hicks. Hicks was at that time serving a life sentence for a separate offense. In return for his testimony, the charges against Hicks for the murders of Fisher and McFarland were dismissed. Additionally, if Hicks' appeal to the Indiana Supreme Court on the prior conviction was successful and a new trial granted, the prosecutor agreed to offer Hicks a reduced twelve-year sentence in return for a guilty plea.

Hicks' testimony reveals that Johnny Hodge was the head of an organization which sold narcotics. Ruby Johnson was Hodge's "second lady" and prepared the narcotics for distribution. Bobby Fisher and Percy McFarland were also drug dealers but not members of Hodge's organization. Hodge decided to kill Fisher and McFarland about two weeks before the murders occurred. On the night of September 8, 1977 Hodge informed Hicks, Priest, Jung, Herrin and Lester Boyd that he had

Sheldon H. Cohan, Merrillville, for defendant-appellant.

set Fisher up to be killed. Hodge dropped this group off at his apartment and drove away. Ruby Johnson was, at that time, present in Hodge's apartment. Upon Hodge's return, the men went to Gilda Smith's residence. Although Smith was not home, the men entered her apartment. Shortly thereafter, Smith arrived with Fisher and McFarland. When Smith and the victims entered the apartment, Hodge and the others came out of hiding with their guns drawn. Fisher and McFarland were stripped, bound and carried out of the apartment and placed in a car. The entire group drove to Hodge's apartment in two cars.

Fisher and McFarland were taken into Hodge's apartment. Johnson was still present in the apartment. Hodge instructed Hicks to get some battery acid from the car and Johnson to get some heroin. Johnson returned from a back room with some heroin and Hicks returned with some corrosion he had scraped from the battery terminals. Hodge had previously stated that he was going to use the battery acid and heroin to give the victims a "hot shot," meaning an overdose. Gilda Smith mixed the corrosion and heroin and prepared the mixture for injection. This procedure took place in the kitchen in the presence of Johnson, Hodge and Hicks. Smith then injected the mixture into both Fisher and McFarland.

At approximately this time, Louis Pride and his girlfriend arrived at Hodge's residence. Fisher and McFarland were taken into a bedroom so Pride would not see them. Johnson, Herrin and Hodge remained in the living room talking to Pride. Pride left about fifteen minutes later.

After Pride left, the victims were returned to the living room. Hodge instructed the others to use some plastic clothes line or electrical cord to choke the victims. The plastic material stretched however and the victims did not die. After this unsuccessful attempt, Fisher and McFarland were gagged, taken downstairs and placed in a car. Hodge stated that they were taking Fisher and McFarland out to kill them and instructed Johnson, Herrin and Smith to stay behind to clean up the apartment.

Hodge and the others drove the victims to Martin Luther King Drive in Gary. After all the fingerprints were wiped off the car, Hodge fired four or five shots into Fisher and McFarland, thereby killing them.

■ Johnson initially challenges the granting of the State's motion in limine.[1] The motion consisted of two parts. The first part sought to prevent the admission of any evidence of inconsistencies between Hicks' testimony at a prior unrelated murder trial and a statement he made to police officers after his conviction. The second part of the motion sought to exclude any evidence concerning an incident in the Porter County Jail in which Hicks and others allegedly made a sexual attack on another prisoner.

■ Johnson argues that the evidence of inconsistent statements demonstrates that Hicks perjured himself in a previous trial in Porter County. According to Johnson, this evidence is admissible as reflecting on Hicks' credibility and his view of the witness's oath. Although it is true that the credibility of a witness may be attacked, prior acts of misconduct may be grounds for the attack only if those acts resulted in a conviction for treason, murder, rape, arson, burglary, robbery, kidnapping, forgery, perjury or other crimes involving dishonesty or false statements. *Mitchell v. State* (1979),

---

1. A challenge to the trial court's ruling on a motion in limine presents nothing for this Court's review. The function of a motion in limine is to keep potentially prejudicial information from being presented to the jury until the trial court has ruled upon its admissibility within the context of the trial itself. *Inman v. State* (1979), Ind., 393 N.E.2d 767. The granting of a motion in limine is not a final determi-

nation of the admissibility of evidence. *Gilliam v. State* (1978), Ind., 383 N.E.2d 297. Error must therefore be alleged with respect to the trial court's exclusion of evidence offered at trial. In the present case, the record indicates that defendants did attempt to offer certain evidence that was protected by the State's motion. It is for this reason that this Court addresses the issue.

Ind., 398 N.E.2d 1254. A witness may not be impeached by proof of particular extraneous acts of misconduct which are not reduced to convictions. *Chambers v. State* (1979), Ind., 392 N.E.2d 1156. In the present case, Hicks was neither convicted, nor charged, with perjury. The trial court therefore did not err in granting the State's motion in limine regarding the alleged perjured statements.

Johnson also argues that the fact that Hicks was not charged with either perjury or sodomy, although probable cause existed, should have been made known to the jury to demonstrate Hicks' bias. Johnson contends that the failure to prosecute Hicks for those two offenses was obviously in exchange for his testimony in the instant case.

■ There is absolutely no evidence in the record which supports Johnson's contention that the Porter County prosecutor's forbearance in not charging Hicks with either crime was in consideration for his testimony. Absent some concrete evidence, Johnson cannot speculate as to the circumstances surrounding the decision not to prosecute Hicks on perjury and sodomy charges. *See also, Bivins v. State* (1970), 254 Ind. 184, 258 N.E.2d 644.

It should also be noted that it was brought to the attention of the jury that in exchange for his testimony, Hicks would be granted immunity with regard to the murders of Fisher and McFarland. The jury was also made aware of the possibility of a reduced sentence in another case. It cannot be contended that immunity from prosecution on two additional charges could have substantially increased Hicks' motive for testifying. Johnson has failed to demonstrate error in the granting of the State's motion in limine.

Johnson next challenges the sufficiency of the evidence. This Court's standard of review for insufficiency claims is well settled. The Court will not weigh the evidence nor judge the credibility of the witnesses, but will look only to that evidence most favorable to the appellee together with all reasonable inferences to be drawn from that evidence. The jury's verdict must be affirmed if there is substantial evidence of probative value as to each essential element of the offense.

■ The trial court instructed the jury as to accessory liability. IC 1971, 35-1-29-1 (Burns Code Ed.) (now repealed) provided:

"Accessory before the fact.—Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command, or otherwise procure a felony to be committed, may be charged by indictment or information, tried and convicted in the same manner as if he were a principal, either before or after the principal offender is charged, indicted or convicted; and, upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

Under this statute, a defendant may be charged as a principal but convicted upon evidence that he aided in the commission of the crime. *Tibbs v. State* (1970), 255 Ind. 309, 263 N.E.2d 728; *Carter v. State* (1976), 170 Ind.App. 501, 353 N.E.2d 495. While presence at the commission of a felony and association with the principals are not in themselves sufficient facts to convict one of being an accessory, they are circumstances which may be considered in determining whether the defendant knowingly assisted the principals. *Pinkler v. State* (1977), 266 Ind. 467, 364 N.E.2d 126. Likewise, the fact that a defendant had knowledge of the crime, but did nothing to oppose it may be considered. *Bigbee v. State* (1977), 173 Ind. App. 462, 364 N.E.2d 149. Although an accessory must aid the principal in the commission of the crime, the evidence need not show that the accessory personally participated in the commission of each element of the crime. *Proctor v. State* (1979), Ind., 397 N.E.2d 980; *Metcalf v. State* (1978), 268 Ind. 579, 376 N.E.2d 1157. The accessory's presence at the time the offense is committed is also not necessary. *Williams v. State* (1979), Ind., 395 N.E.2d 239. Circumstances and conduct surrounding an individual, both before and after commission of a crime by

another, may be considered in determining whether aiding and abetting might be inferred. *Amaro et al. v. State* (1968), 251 Ind. 88, 239 N.E.2d 394. In making a determination whether a person is guilty as an accessory before the crime, the court must look for affirmative conduct either in the form of acts or words from which a reasonable inference of a common design or purpose to effect the commission of the crime might be drawn. *Pace v. State* (1967), 248 Ind. 146, 224 N.E.2d 312. A preconceived scheme or plan need not be proven however. Mere concerted action or participation in the illegal acts is sufficient. *Wright v. State* (1977), 266 Ind. 327, 363 N.E.2d 1221.

As noted in the recitation of facts, Johnson was an active participant in the actions leading up to the deaths of Fisher and McFarland. She was present when Hodge instructed Hicks to get battery acid so Fisher and McFarland could be given "hot shots." She herself brought the heroin. Johnson was present when Smith mixed the heroin and corrosion together. Furthermore, Johnson remained in the living room while Louis Pride was present and the victims were being held captive in the bedroom. This was obviously in furtherance of the attempt to hide the prisoners from Pride. Johnson was also present at the attempted strangulation of Fisher and McFarland. Finally, after Hodge had stated that he and the others were taking Fisher and McFarland out to kill them, Johnson stayed behind to clean up the apartment as Hodge instructed. The fact that Johnson did as Hodge instructed although it was apparent that Hodge intended to kill Fisher and McFarland, along with the other circumstances, is sufficient for the jury to find Johnson guilty as an accessory. Additionally, since the evidence is sufficient to sustain the conviction, the trial court did not err in denying Johnson's motion for a directed verdict.

Johnson also briefly discusses the issue of whether it is contrary to law to find an accessory guilty of manslaughter when the principals are found guilty of murder. This issue was discussed in *Walker v. State*

(1965), 246 Ind. 386, 204 N.E.2d 850 with respect to an accessory after the crime. There the Court noted that at common law accessories " 'must be convicted of a felony of the same species as the principal.' " *Id.* at 390, 204 N.E.2d at 853, *citing* 1 Chitty, Criminal Law 272 (4th American Ed. 1841). The Court also pointed out that the crux of the crime of the principal in *Walker* was homicide. It was not therefore inconsistent to find the principal guilty of first-degree murder and the accessory guilty of second-degree murder. Likewise, in the present case, the crux of the principal's crime is homicide. Under appropriate circumstances, involuntary manslaughter is a lesser included offense of first-degree murder. It is not fatally inconsistent therefore to find the principal guilty of first-degree murder and the accessory guilty of involuntary manslaughter.

Johnson next contends that the trial court erred in failing to grant her pretrial motion for a separate trial. This motion was also made and denied at various times during the trial. In particular, Johnson argues that certain out-of-court statements made by witnesses Jackie Hicks and Theodell McGowan which were admitted into evidence were prejudicial to her and thus a severance should have been granted in the interests of justice. It appears that these out-of-court statements were used by the other defendants to impeach the credibility of Hicks and McGowan. Since portions of the statements were used by defendants for impeachment, the State was entitled to introduce into evidence the complete text of the statements. It is the State's introduction of the statements which Johnson contends is prejudicial to her. Johnson anticipated that if the portions of the statements were used for impeachment purposes, the State would introduce the complete text of the statements. Johnson therefore objected at the time the statements were offered for impeachment.

Johnson refers this Court to IC 1971, 35–3.1–1–11(b) (Burns Code Ed.) as support for her motions for a separate trial. The statute provides:

"(b) Whenever two [2] or more defendants have been joined for trial in the same indictment or information and one [1] or more defendants move for a separate trial because another defendant has made an out-of-court statement which makes reference to the moving defendant but is not admissible as evidence against him, the court shall require the prosecutor to elect either:

(1) A joint trial at which the statement is not admitted into evidence;

(2) A joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; or

(3) Granting the moving defendant a separate trial.

"In all other cases, upon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant."

It should be noted that neither Hicks nor McGowan was a co-defendant in Johnson's trial. The prosecutor thus was not required to make the election provided for in the statute. It must therefore be determined whether the trial court erred in not determining "that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant."

■ The trial court's decision to grant separate trials under IC 1971, 35–3.1–1–11(b) is reviewable only for abuse of discretion. *Ortiz, Williams v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188. Whether the trial court abused its discretion is determined by reference to what actually transpired at trial and not what was alleged in the motion. *Ortiz, Williams, supra; Garrison v. State* (1967), 249 Ind. 206, 231 N.E.2d 243. A defendant is not entitled to a separate trial as a matter of right merely because damaging evidence of the actions of a co-defendant reflects, by implication, on her, since there is no constitutional right to be protected from damaging evidence. *Frith; Williams v. State* (1975), 263 Ind. 100, 325 N.E.2d 186. The trial court does not abuse its discretion in refusing to order separate trials on the basis that a defendant may be found guilty by association where the evidence presents clearly defined and distinctive roles for each defendant and there is no confusion over who may have spoken certain words or may have done certain acts. *Henry; Davis v. State* (1978), 269 Ind. 1, 379 N.E.2d 132.

■ Hicks' prior statements were used during his questioning on cross-examination. During this questioning, the only reference to Johnson concerned the fact that she remained in the living room with Louis Pride while the victims were being held captive in the bedroom. At a later time the written statements were read into evidence by the State. Prior to the reading of the statements however, Johnson, along with the other co-defendants, was given an opportunity to redact the statements to omit improper references to the co-defendants. It does not appear that Johnson requested anything be omitted. The statements, as introduced, made limited references to Johnson. With the exception of Hicks previously stating that Johnson worked for Hodge's organization, the prior statements were identical to Hicks' trial testimony concerning Johnson. The reference to Johnson working for Hodge's organization was discussed, but Johnson did not request that it be omitted. Johnson chose instead to use the statement as an inconsistent statement to impeach Hicks' credibility. Although Johnson argues that the statements in their entirety tend to corroborate Hicks' trial testimony, thereby causing prejudice against her, a review of the prior statements demonstrates that they also tended to impeach Hicks. While it is possible that if Johnson had been granted a separate trial, she would have chosen not to use the prior statements to impeach Hicks and thus foreclose the State from reading into evidence the entire text of the statements, Johnson

has not demonstrated sufficient prejudice to establish an abuse of discretion by the trial court in failing to grant a separate trial.

Johnson has also failed to show prejudice with respect to the letters written by McGowan. A review of the letters reveals absolutely no reference to Johnson.

On appeal, Johnson argues that the method employed by the State in introducing the prior statements of Hicks was erroneous. The record reveals however that Johnson did not object to the manner of introducing the statements. Any error is therefore waived.

For the above reasons, the judgment of the trial court is affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.