**Robert Earl WILLIAMS, Appellant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 381 S 77.**

Supreme Court of Indiana.

March 3, 1982.

Rebecca Balanoff, Hammond, for appellant.

Linley E. Pearson, Atty. Gen., Carolyn M. Brawner, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of Robbery and declared to be an habitual criminal. He was sentenced for ten (10) years on the robbery charge and after a bifurcated hearing was declared an habitual criminal and his sentence was increased to thirty (30) years.

The record shows the following facts. At approximately 12:45 A.M. on February 11, 1981, the White Hen Pantry in Hammond, Indiana was robbed. The robber was described as a man wearing a mask, a maroon and white shirt, a floppy hat, and a light colored coat. He produced a gun and demanded the money in the cash drawer. Paula Miller, one of the employees of the restaurant, gave the man paper money consisting of one and five dollar bills, and some food stamps. The money was placed in a brown paper bag. He left the scene of the robbery in a blue automobile bearing Illinois license plates reading EDY 10. Although a mask covered most of his face, the victims of the robbery were able to identify him as male by the tone of his voice, and as a black person by observing his skin and hair not covered by the mask. Witnesses described him as being about 5'8" and of medium build.

Investigating police officers furnished with the above description, including the license number of the automobile, drove to a nearby housing project to search for the suspect. There they found a parked vehicle corresponding to the description given including the license number. Appellant was seated in the car at the time of its discovery. The arresting officer ordered appellant out of the automobile at which time appellant jumped from the car and dove between the car and a nearby parked car. The arresting officer was able to persuade him to come out from between the cars at which time he was placed under arrest.

A search was then made of the area and a paper bag of money of the same denomination taken in the robbery was found. At the police station, a search of Mr. Williams produced seven one-dollar food stamps. At the time of his arrest the appellant was wearing a dark hat, a light coat, and a maroon and white shirt.

At the trial, appellant presented an alibi defense. Appellant claims the evidence is insufficient for the jury to find that he was the perpetrator of the robbery. Appellant makes this claim based upon the fact that the victims of the robbery could not identify him personally and were not sure that the clothing appellant was wearing at the time of his arrest was the same clothing worn by the robber, although it was similar in appearance. He further points to the fact that no fingerprints were recovered from the car in which he was sitting at the time he was apprehended. He also contends the money recovered in the paper sack at the scene of his apprehension was not positively proven to be the money taken in the robbery. He further claims that it was not until he was in the police station that food stamps were found on his person. It is his claim that these stamps were planted on him by the police department. He claims the only evidence against him is circumstantial and is not sufficient to sustain the conviction.

In the case at bar the evidence as above recited is more than sufficient to support the verdict of the jury. Not only did appellant fit the general description so far as size and race given by the victims of the crime, but his conduct at the time of his apprehension and the recovery of money of the general denomination taken in the robbery near the scene in a paper sack supports the finding of the jury that he was, in fact, the robber.

Although appellant took the witness stand and presented an alibi defense, claiming that he was present in a friend's apartment until shortly before he was arrested by the police, this was merely evidence presented to the jury which they were entitled to weigh along with the other evidence in making their decision as to who to believe and who not to believe. *Borden v. State*, (1980) Ind., 400 N.E.2d 1368. We hold the evidence is sufficient to support the verdict of the jury.

Appellant also claims the trial court erred in denying his motion for a continuance of the trial on the habitual criminal charge on the grounds there was insufficient time for his counsel to prepare for trial and investigate the prior convictions as the State gave notice of the filing of the second count to Mr. Williams's counsel only seven days before trial commenced. The habitual criminal statute does not establish a separate crime, it merely provides for the imposition of an enhanced penalty for the instant crime. *Norris v. State*, (1979) Ind., 394 N.E.2d 144.

The issues of a defendant's guilt or innocence of prior crimes of which he has been convicted are not before the trial court in an habitual criminal hearing. That is not the proper forum to contest the legality of those prior sentences by way of collateral attack. *See, Walker v. State*, (1965) 246 Ind. 386, 204 N.E.2d 850 (final judgment in criminal case may not be attacked in a later case collateral thereto); *Kuhn v. State ex rel. VanNatta*, (1980) Ind.App., 404 N.E.2d 1360 (defendant's attack on prior convictions at habitual traffic offender proceeding is impermissible collateral attack). The only issue before the trial court is whether or not appellant has, in fact, been found

guilty and sentenced as required under the statute of prior offenses.

Once those convictions have been established then the court may impose the enhanced sentence under the statute. A postponement of the trial date is not mandatory and it is incumbent upon the defendant to demonstrate to the trial court that a continuance is necessary. *Hooks v. State,* (1977) 266 Ind. 678, 366 N.E.2d 645. This Court will not reverse the decision of the trial court unless there is a clear showing that the moving party was substantially prejudiced. *Hooks v. State, supra.*

 In the case at bar the appellant took the witness stand and testified concerning his prior convictions. Under the circumstances the trial court was well within his province to deny the continuance. The fact of appellant's prior convictions was a matter of record which he knew. There is no showing that a continuance would have produced any information which would have been helpful to appellant in this regard.

The suggestion that the prior convictions might be collaterally attacked was not a proposition which could have been properly litigated in the instant case. We find no error in the failure of the trial court to grant a continuance. .

The trial court is in all things affirmed.

HUNTER, PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., concurs in result with opinion.

DeBRULER, Justice, concurring in result.

The Court considers whether the accused may contest prior convictions in defending against a habitual criminal count, in the course of considering whether a continuance was properly denied. I agree with the general proposition that prior convictions are not subject to collateral attack in recidivist proceedings such as these; however, at the same time it must be recognized that there are rare instances in which this rule must give way. *Burgett v. State of Texas,*

(1967) 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319; *McCormick v. State,* (1971) 256 Ind. 78, 267 N.E.2d 78. Furthermore, very recently in *Barnett v. State,* (1981) Ind., 429 N.E.2d 625, we held that it was error for a trial court to deny a continuance requested in response to an amendment of the charge to include a recidivist count made on the first morning of trial. We went on to conclude that from the post-trial appellate perspective, the error did not prejudice the substantial rights of the accused. And I believe the same is true here. Appellant admits that he had partial discovery on the habitual offender matter before trial, and while contending that he did not get a chance to depose two witnesses, he does not contend that he did not have access to them. Furthermore, while contending that subpoenas issued to obtain transcripts of guilty plea proceedings in 1974–1975 cases were not honored, he does not assert that he had no access at all to them or to official documents which reflected prior convictions.