CASSORLA v. STATE OF INDIANA.

[No. 30,814. Filed May 28, 1968. Rehearing granted November 7, 1968.]

*Palmer K. Ward,* Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *Wilma T. Leach,* Deputy Attorney General, for appellee.

ARTERBURN, J.—I cannot agree with the appellant's contention that a proper oath was not administered in this case before the Alcoholic Beverage Commission, which oath was in the following words:

> "Do you most solemnly and sincerely promise and swear and affirm under the penalty for perjury, that the testimony which you will give here today as a witness under oath in this matter, will be, and is, the truth, the whole truth and nothing but the truth, so help you, as a veritable witness of your absolute honesty and integrity."

Acts 1881 (Spec. Sess.), ch. 38, § 272, p. 240, being Burns' Ind. Stat. Anno. § 2-1711 [1968 Repl.] provides as follows:

> *"Oath—Mode of administering.*—Before testifying, every witness shall be sworn to testify the truth, the whole truth, and nothing but the truth. The mode of administering an oath shall be such as may be most consistent with, and binding upon the conscience of the person to whom the oath may be administered."

and Acts 1881 (Spec. Sess.), ch. 38, § 857, p. 240, being Burns' Ind. Stat. Anno. § 2-4701 [1968 Repl.] states in part:

> "[Fourth] The word 'oath' includes the word 'affirmation,' and the phrase 'to swear' includes to affirm."

The swearing that took place conformed either to that of an oath or an affirmation.

I do not believe that an oath has to consist of certain magic words, but it is the substance and intent of what is stated that the law looks upon. In *State ex rel. Braley, et al.* v. *Gay* (1894), 59 Minn. 6, 60 N. W. 676, the oath was in the following words: "You swear now to this; that what you have told me is true." The court held although the oath was not in

formal words, the expressions and intent were sufficient to constitute a valid oath.

In 39 Am. Jur., *Oath and Affirmation*, § 13 it is stated:

"While an oath is usually taken upon the Gospels or by swearing with uplifted hand, it is well settled that the form in which an oath is administered does not affect its sufficiency for the purpose of basing thereon a charge of perjury, and that any form which appeals to the conscience of the person to whom it is administered and binds him to speak the truth is sufficient. Persons who have peculiar forms which they recognize as obligatory and believers in other than the Christian religion may be sworn in their own manner, or according to the peculiar ceremonies of the religion which they profess and which they declare to be binding. Whenever the attention of the person to be sworn is called to the fact that his statement is not a mere asseveration, but must be sworn to, and, in recognition of this, he is asked to do some corporal act, and does it, this is considered to be a statement under oath. Persons whose conscience will not permit them to swear at all are usually allowed to declare or affirm."

In my opinion it is only necessary that there must be some unequivocal act by which the affiant consciously takes upon himself the obligation of the oath. See also: *State v. Browning* (1911), 153 Iowa 37, 133 N. W. 330; *State v. Tull* (1933), 333 Mo. 152, 62 S. W. 2d 389.

If this was not an oath in the narrow sense of the word, it was an affirmation, and an affirmation does not necessarily have to invoke divine retribution in event of falsity.

I feel the oath in this case met the requirements of the statute as well as common law.

Hunter, J. concurs.

## DISSENTING OPINION

JACKSON, J.—This is an appeal from the Marion Criminal Court, Division 2, following conviction therein, after trial by jury, on a charge of perjury presented by indictment.

The indictment, omitting formal parts, reads as follows, to-wit:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that MIKE CASSORLA on or about the 29th day of July, A. D. 1964, at and in the County of Marion and in the State of Indiana, did then and there appear as a witness before the INDIANA ALCOHOLIC BEVERAGE COMMISSION as a witness upon the application for the issuance of a Retailer's Permit, said application having been made by ROUND TABLE INC. d/b/a CLOVER CLUB, evidence upon which application was then and there heard by said Commission; that upon said hearing the said MIKE CASSORLA appeared as a witness for and on behalf of the ROUND TABLE INC. d/b/a CLOVER CLUB and was then and there duly sworn by JOHN HIRSCHMAN, Deputy Attorney General, as a witness, and was examined in the said hearing, the said JOHN HIRSCHMAN as such Deputy Attorney General then and there having full power and complete authority to administer the said oath to the said MIKE CASSORLA in that behalf; that upon the hearing on the said application it became and was material to inquire whether the said MIKE CASSORLA knew that one KAY MARTIN worked as a prostitute for one JERRY HOSTETTLER at a time when said KAY MARTIN visited the premises of said ROUND TABLE INC. d/b/a CLOVER CLUB, and whether the said MIKE CASSORLA knew such fact at the time of said hearing; that it further became and was material to inquire whether said MIKE CASSORLA encouraged prostitutes to come on the premises of the said ROUND TABLE INC. d/b/a CLOVER CLUB and ask them to dance at that place; that it further became and was material to inquire whether on the evening of June 3, 1964, JERRY HOSTETTLER was upon the premises of the ROUND TABLE, INC. d/b/a CLOVER CLUB with said KAY MARTIN and whether the said MIKE CASSORLA threw the said JERRY HOSTETTLER out of said place about ten minutes after he came in; and that thereupon the said MIKE CASSORLA, then and there being so sworn as a witness as aforesaid and having then and there taken a lawful oath in the said proceeding where an oath or affirmation was by law required, did then and there upon hearing before the Commission as aforesaid feloniously, wilfully, corruptly and falsely, in a material matter, depose, swear and testify in substance, among other things, that he did not know whether the said KAY MARTIN was working as a prostitute for JERRY HOSTETTLER at a time when she visited the premises of the said ROUND TABLE INC. d/b/a CLOVER CLUB

and that he did not know that fact at the time of said hearing; that he did not encourage prostitutes to come upon the premises of ROUND TABLE INC. d/b/a CLOVER CLUB and dance at that place; that he did not know that JERRY HOSTETTLER was with KAY MARTIN on the premises of ROUND TABLE INC. d/b/a CLOVER CLUB on the evening of June 3, 1964, and that he did throw the said JERRY HOSTETTLER out of said place about ten minutes after the said JERRY HOSTETTLER came in, whereas in truth and in fact, as the said MIKE CASSORLA then well knew, he was aware at a time when KAY MARTIN was upon the premises of the ROUND TABLE INC. d/b/a CLOVER CLUB that she was working as a prostitute for JERRY HOSTETTLER, and the said MIKE CASSORLA was aware of that fact at the time of testifying at said hearing; that the said MIKE CASSORLA encouraged prostitutes to come to the premises of ROUND TABLE INC. d/b/a CLOVER CLUB and dance at that place; that he was aware that JERRY HOSTETTLER was with KAY MARTIN on the premises of ROUND TABLE INC. d/b/a CLOVER CLUB on the evening of June 3, 1964, and that the said MIKE CASSORLA did not throw JERRY HOSTETTLER out of the said place about ten minutes after he came in.

And so the Grand Jurors aforesaid, upon their oaths aforesaid, do present and charge that the said MIKE CASSORLA in the manner and form aforesaid and at the time and place first aforesaid did wilfully, corruptly, falsely and feloniously commit wilful and corrupt perjury, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

The appellant waived arraignment and entered a plea of not guilty to the indictment.

The trial began March 22, 1965, and concluded March 23, 1965, when the jury returned a verdict finding the appellant guilty of perjury as charged in the indictment.

Thereupon the court ordered Pre-Commitment Investigation Report and set the date for sentencing as April 2, 1965, at 9:30 a.m.

The Pre-Commitment Investigation Report was filed by the Probation Department in the trial court on April 1, 1965.

Sentencing was continued, on motion of appellant, until April 23, 1965, at 2:00 p.m.

Thereafter, on April 21, 1965, appellant filed Motion for New Trial. Such motion in pertinent part reads as follows:

"1. The verdict of the Jury is not sustained by sufficient evidence.

2. The verdict of the Jury is contrary to law."

Thereafter, on April 23, 1965, appellant's Motion for New Trial was overruled and the following sentence imposed:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the defendant be and hereby is, sentenced to the Indiana State Prison for not less than One (1) nor more than Ten (10) years."

Appellant's Assignment of Errors contains the following three specifications, to-wit:

"1. That the Court erred in overruling the appellant's Motion for New Trial.

2. The verdict of the Jury is contrary to law."

3. That the verdict of the jury is not sustained by sufficient evidence."

In the case at bar we deem it unnecessary to set forth any of the evidence. The appellant under the second specification of his motion for new trial argues that the verdict of the jury is contrary to law in that the oath administered to him before the Alcoholic Beverage Commission was not a lawful oath. The oath in question reads as follows:

"Do you most solemnly and sincerely promise and swear and affirm under the penalty for perjury, that the testimony which you will give here today as a witness under oath in this matter, will be, and is, the truth, the whole truth and nothing but the truth, so help you, as a veritable witness of your absolute honesty and integrity."

Before proceeding to determine this question we think the background of the form of the alleged oath and the alleged

oath should be given. This appears from the cross-examination of Mr. Hirschman.

"Q. And, you were asked in this case to administer the oath, is that correct? Now is this oath the same oath that was given to all witnesses at all hearings?

A. No, it's not.

Q. And, will you explain that to the jury and the Court?

A. You mean this particular oath?

Q. Yes, why this was a little different?

A. Well, for some time I've been concerned about the Supreme Court of the United States approach to the use of a supreme being or a deity in any governmental function or relationship, and since I had a responsibility for giving legal advice to two administrative agencies I felt that perhaps it would be worthwhile to work up an oath which did not refer to a supreme being. . . ."

The indictment herein is based on Acts 1905, ch. 169, § 474, p. 584, as amended, being § 10-3801 Burns' 1956 Repl. which in part provides as follows:

"Whoever, having taken a lawful oath or affirmation in any matter in which, by law, an oath or affirmation may be required. . . ."

It is the appellant's contention that the purported oath given by Mr. Hirschman at the hearing before the Alcoholic Beverage Commission was not a lawful oath or affirmation and, therefore, the appellant cannot be found guilty of the crime of perjury. There is no statute in Indiana which defines what an oath is or should be in a criminal proceeding. In our civil proceedings we find the following statute, Acts 1881 (Spec. Sess.), ch. 38, § 272, p. 240, being § 2-1711 Burns' 1968 Repl. which reads as follows:

"Before testifying, every witness shall be sworn to testify the truth, the whole truth, and nothing but the truth. The mode of administering an oath shall be such as may be most consistent with, and binding upon the conscience of the person to whom the oath may be administered."

The legislature of the State of Indiana has provided an oath to be given to the members of all grand juries. This is Acts 1905, ch. 169, § 93, p. 584, being § 9-807 Burns' 1956 Repl. and reads as follows:

"The following oath must be administered to the grand jury:

'You, and each of you, do solemnly swear or affirm that you will diligently inquire, and true presentment make, of all felonies and misdemeanors, committed or triable within this county, of which you shall have or can obtain legal evidence; that you will present no person through malice, hatred or ill-will, nor leave any unpresented through fear, favor or affection, or for any reward, or the promise or hope thereof, but in all your indictments you will present the truth, the whole truth and nothing but the truth; that you will not disclose any evidence given or proceeding had before the grand jury. Those of you who swear, so help you God, and those of you who affirm do solemnly affirm under the pains and penalties of perjury.' "

*It would seem obvious that for an oath to be a binding oath it must contain the following: for those who "affirm" the words "under the pains and penalties of perjury" and for those who "swear" it must contain "so help you God."* It is appellant's contention that the oath given by Mr. Hirchman was not a lawful oath as no where in said oath is there any mention of a Supreme Being and since the oath given was not a lawful oath under our law then the appellant cannot be guilty of perjury.

Returning now to a consideration of the question raised by appellant under this specification we find oath defined as follows:

"Oath.   1a.   A ritualistic declaration, based on an appeal to God or to some revered person or object, that one will speak the truth, keep a promise, remain faithful etc. . . ."
Webster's New World Dictionary.

"In its broadest sense, an oath is any form of attestation by which a person signifies that he is bound in conscience to perform an act faithfully and truthfully. It involves the idea of calling on God to witness what is averred as truth, and

it is supposed to be accompanied by an invocation of His vengeance, or a remunication of His favor, in the event of falsehood."

39 Am. Jur., Oath and Affirmation, § 2.

"It has been said that an oath is a solemn adjuration to God to punish the affiant if he swears falsely. The sanction of the oath is a belief that the Supreme Being will punish falsehood, and whether that punishment is administered by remorse of conscience, or in any other mode in this world, or is reserved for the future state of being, cannot affect that question, for the sum of the matter is a belief that God is the avenger of falsehood."

39 Am. Jur., Oath and Affirmation, § 5.

We are compelled to agree with the appellant's contention that the alleged oath administered in the hearing before the Alcoholic Beverage Commission was not a lawful oath and that, therefore, the appellant cannot be guilty of perjury.

Other questions presented herein need not be and are not here decided for the reason that they will not recur on a retrial.

The cause should be reversed and remanded with instructions to grant appellant's Motion for New Trial.

Mote, J. concurs.

ON PETITION FOR REHEARING.

ARTERBURN, J.—This was a prosecution for perjury and this Court divided evenly (J. Lewis not participating) on whether or not the oath administered was defective. Judges Jackson and Mote contended the oath was insufficient, while Judges Arterburn and Hunter took the position that the oath, although informal in nature, was sufficient legally. (See Cassorla v. State [1968], 251 Ind. 390, 237 N. E. 2d 89.) The judgment of the trial court was accordingly affirmed.

Now, on rehearing, the appellant calls our attention to the fact that the divided opinions handed down by the Court failed to dispose of a question and issue presented, namely, that in a criminal charge of perjury it

is necessary that the evidence for conviction be supported by the direct testimony of at least two witnesses, or one witness and corroborating facts and circumstances. In this case the only testimony was that of an admitted prostitute, which contradicted the testimony of the appellant as to the truthfulness of the statement. There was no corroborating evidence to support the testimony of the state on that material issue.

The case of *Hann* v. *State of Indiana* (1916), 185 Ind. 56, 113 N. E. 304 is cited in support of appellant's position. It appears to us that this is the law in Indiana and there may be logic and reason behind such a rule of evidence to support a conviction in a perjury case. We find, therefore, that the evidence is insufficient to support the conviction of perjury.

The petition for rehearing is granted and the judgment of the trial court is reversed, with directions to grant a new trial.

Hunter, Jackson and DeBruler, JJ. concur.

Lewis, C.J. not participating.

NOTE.—Reported in 241 N. E. 2d 365.