Alberteen CUNNINGHAM and Iotha
Cunningham, Appellants
(Defendants Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4–883A270.

Court of Appeals of Indiana,
Fourth District.

Sept. 27, 1984.

Rehearing Denied Nov. 9, 1984.

Wallace E. Weakley, Sheridan, for Iotha Cunningham.

Reuben B. Hill, Indianapolis, for Alberteen Cunningham.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Appellants-Defendants Alberteen Cunningham (Alberteen) and Iotha Cunningham (Iotha) appeal their Hamilton Superior Court jury convictions on various charges of theft, a class D felony, IND.CODE 35–43–4–2, perjury, and class D felony, IND. CODE 35–44–2–1, and conversion, a class A misdemeanor, IND.CODE 35–43–4–3. Iotha also appeals the sentence rendered by the trial court.

We affirm.

ISSUES

This appeal presents five issues:

1. Whether the trial court erred in refusing to sever Alberteen's trial.

2. Whether the trial court erred in refusing to declare a mistrial due to alleged prosecutorial misconduct.

3. Whether the trial court erred in admitting the testimony of Benita Leach.

4. Whether the evidence was sufficient to support the convictions.

5. Whether Iotha Cunningham's sentence constitutes cruel and unusual punishment.

FACTS

From about October, 1977, through about November, 1979, Iotha and Alberteen procured food stamps through the Hamilton County Department of Public Welfare. They filled out applications for food stamps under the supervision of department employee Benita Leach (Leach). The applications required disclosure of outside income sources. The Cunninghams did not disclose benefits from county poor relief, various insurance payments, and other outside income on their applications.

The Cunninghams originally were charged with ten counts of perjury, ten counts of deception, and ten counts of theft. Several counts were dismissed on motion of the State, and the trial court sustained the Cunninghams' motion to dismiss other counts. The trial court also dismissed several counts at the close of the State's case-in-chief. The court denied Alberteen's motions for separate trials.

The day jury selection was completed, an article was published in a local newspaper discussing the case and prior plea bargaining. It cited "the prosecution" as its source. The trial court denied the Cunninghams' subsequent motion for mistrial based on prosecutorial misconduct in providing information for the article.

The jury found Alberteen guilty of three counts of theft, three counts of conversion as a lesser included offense of theft, one count of perjury, and not guilty of one count of perjury. The jury found Iotha guilty of eight counts of theft and five counts of perjury, and not guilty of one count of perjury.

The trial court sentenced Alberteen to a two-year term on each of the convictions of theft and perjury, and a one-year sentence on each of the convictions of conversion, the sentences to run concurrently and suspended, with Alberteen placed on probation requiring 800 hours of community service restitution, an appropriate public apology, and other conditions. The court sentenced Iotha to eight consecutive two-year terms for the theft convictions, five consecutive two-year terms for the perjury convictions, the combined sentences for theft and perjury to be served concurrently and concurrently with any sentences being served on prior convictions.

Other relevant facts are stated below.

DISCUSSION AND DECISION

### I. Severance

Alberteen contends she was denied a fair trial because the trial court refused to sever her trial from Iotha's. The State argues Alberteen has not demonstrated she was prejudiced by the decision. We agree with the State.

■ IND.CODE 35–34–1–11(b) (formerly IC 35–3.1–1–11(b)) provides in pertinent part:

> In all other cases, upon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant.

To compel severance, the defendant "must demonstrate that a fair trial cannot be had otherwise, not merely that a separate trial offers a better chance of acquittal." *Drane v. State*, (1982) Ind., 442 N.E.2d 1055, 1056. The decision whether to sever trials is a matter for the trial court, reviewable only for an abuse of discretion. *Hodge v. State*, (1982) Ind., 442 N.E.2d 1006, 1011; *Scott v. State*, (1981) Ind., 425 N.E.2d 637, 638.

In analogous circumstances Judge Hoffman wrote:

> The trial court does not abuse its discretion in refusing to order separate trials on the basis that a defendant may be found guilty by association where the evidence presents clearly defined and distinctive roles for each defendant and there is no confusion over who may have spoken certain words or may have done certain acts. (Citations omitted.)

*Johnson v. State*, (1981) Ind.App., 423 N.E.2d 623, 629.

■ Although here there was some overlapping conduct, the evidence generally demonstrated separate and distinct transactions involving Iotha or Alberteen. It is clear, the trial court and jury determined Alberteen's culpability separately and distinctly from the charges against Iotha. The trial court did not abuse its discretion by refusing to sever their trials.

### II. Prosecutorial Misconduct

The Cunninghams claim the convictions must be reversed because of alleged prose-

cutorial misconduct in providing information which led to a prejudicial article in a local newspaper. There is no merit to this contention.

The day jury selection was completed the Noblesville Daily Ledger reported prior plea-bargain negotiations had broken down, and "the prosecution" predicted the Cunninghams might receive longer prison terms if convicted than those discussed in plea-bargaining. The Cunninghams claim release of such information constituted prejudicial violations of various Disciplinary Code provisions. A new trial is required, they opine.

This court evaluates claims of prosecutorial misconduct through a four-part test articulated by our supreme court in *Maldonado v. State*, (1976) 265 Ind. 492, 498–99, 355 N.E.2d 843, 848:

1. Did the prosecutor engage in misconduct;

2. If so, was the defendant placed thereby in a position of grave peril to which he should not have been subjected;

3. Whether grave peril results is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct;

4. Although an isolated incident of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal may still result.

*Gaines v. State*, (1983) Ind.App., 456 N.E.2d 1058, 1062.

Initially, we note the record does not support a conclusion the prosecution gave the information to the newspaper. Only vague references to "the prosecution" in the article so suggest.

■ Even assuming the prosecutor did provide the information, the Cunninghams demonstrate no prejudice because of its use as required by step two of the *Maldonado* test. The trial court admonished the jury not to read newspaper accounts of the trial.

After the article was brought to the trial court's attention, it carefully interviewed each juror individually. All stated they had not read the article, though several stated they had ignored the article after seeing its headline. (R. 421–34). In similar circumstances, no error has been found by the reviewing court. *See, e.g., Leavell v. State*, (1983) Ind., 455 N.E.2d 1110, 1116–17; *see also Ferguson v. State*, (1980) 273 Ind. 369, 370–72, 403 N.E.2d 1373, 1374–76; *but see Lindsey v. State*, (1973) 260 Ind. 351, 354–65, 295 N.E.2d 819, 821–27 (prejudicial publicity required new trial).

No error is demonstrated here.

### III. Relevance of Leach's Testimony

The Cunninghams next contend Leach's testimony should have been stricken as irrelevant. Although the Cunninghams' argument on this issue is less than clear, they apparently contend because the statutes and regulations regarding the requirements for food stamp applications and distribution were neither offered nor judicially noticed, Leach's testimony was not evidence the Cunninghams violated such requirements by giving her false information. We disagree.

We agree *Fitch v. City of Lawrenceburg*, (1938) 104 Ind.App. 704, 12 N.E.2d 391, and *McLeaster v. City of Lawrenceburg*, (1938) 104 Ind.App. 572, 12 N.E.2d 389, support the proposition a trial court's failure to take judicial notice of material facts not otherwise established may result in a record insufficient to sustain the judgment. However, the State's failure in this case to introduce statutory/regulatory sources of food stamp application/distribution requirements does not compel reversal on that basis.

■ Relevant evidence tends to prove a material fact. *Armstrong v. State*, (1982) Ind., 429 N.E.2d 647, 651 and authorities cited. Moreover, "the trial court is accorded wide latitude in ruling on the relevancy of evidence." *Id.*, 429 N.E.2d at 651. This appeal does not concern the validity or propriety of state food stamp application re-

quirements. Rather, it concerns whether the Cunninghams provided incomplete or false information to the Hamilton County Welfare Department and thereby exercised unauthorized control over food stamps.

Leach testified she had worked for the Hamilton County D.P.W. for about 11 years, had been processing food stamp applications since about 1977, and was familiar with department procedures, particularly financial disclosure requirements, for clients obtaining food stamps. She assisted the Cunninghams in completing their applications. The information they provided unquestionably was used to obtain food stamps from the department.

■ Leach's testimony, and the forms completed by the Cunninghams, thus tended to prove the Cunninghams supplied false information to the department and thereby exercised unauthorized control over food stamps. The law and regulations were not involved, the issue of whether the Cunninghams furnished false information was. The trial court properly determined Leach's testimony was admissible.

### IV. Sufficiency of the Evidence

■ Because the Cunninghams' brief does not present argument, citations to the record or authority to support their contention the evidence as to the theft and conversion counts was insufficient, that issue is waived. *Gajdos v. State*, (1984) Ind., 462 N.E.2d 1017, 1021; *Wireman v. State*, (1982) Ind., 432 N.E.2d 1343, 1346, *cert. denied* 459 U.S. 992, 103 S.Ct. 350, 74 L.Ed.2d 389; *Ruth v. State*, (1984) Ind. App., 462 N.E.2d 269, 272; Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

The Cunninghams also contend the evidence was not sufficient to sustain the perjury convictions because the State did not establish their representations were made "under oath or affirmation" as required by IND.CODE 35–44–2–1.[1] We disagree.

■ On review of sufficiency of evidence questions this court neither reweighs the evidence nor judges credibility of witnesses. We review the evidence in a light most favorable to the State and all reasonable and logical inferences to be drawn therefrom. We affirm if the conviction is supported by substantial evidence of probative value. *Morrison v. State*, (1984) Ind., 462 N.E.2d 72, 74; *Bean v. State*, (1984) Ind., 460 N.E.2d 936, 945.

■ The food stamp application forms included a "certification" section, which provided in relevant part:

17. CERTIFICATION

I certify that this application has been examined by me (or read to me) and that the information given is true and correct to the best of my knowledge and belief. I agree to provide the county food stamp office information necessary to verify any statements given in this application and hereby give permission to obtain such verification. I will also cooperate fully with state and federal personnel in a quality control review.

I agree to inform the county food stamp office promptly (within 10 days) of changes in income and/or deductions of more than $25.00 per month, resources, living arrangements or other information which I have given since such changes may affect eligibility to purchase food coupons or the amount to be paid for them.

This section constituted an "affirmation" for purposes of IC 35–44–2–1. As Justice Arterburn stated:

it is only necessary that there must be some unequivocal act by which the affiant consciously takes upon himself the obligation of the oath. (Citations omitted.)

If this was not an oath in the narrow sense of the word, it was an affirmation,

---

1. IC 35–44–2–1 provides in pertinent part:
Sec. 1. (a) A person who:
(1) makes a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true ... commits perjury, a Class D felony.

and an affirmation does not necessarily have to invoke divine retribution in event of falsity.

*Cassorla v. State,* (1968) 251 Ind. 390, 392, 237 N.E.2d 89, 94, *reh. granted and conviction reversed on other grounds* 251 Ind. 398, 241 N.E.2d 365.

█ The Cunninghams' signatures on the applications constituted "unequivocal acts" affirming they had disclosed all other sources of income, which they had not. This evidence was sufficient to establish violations of IC 35–44–2–1.

### V. Sentence Manifestly Unreasonable

Finally, Iotha argues the sentence imposed upon him was excessive and should be revised. We agree.

When pronouncing sentence, the trial court stated

> The Food Stamp Program was established to provide a shield against hunger in America. Iotha Cunningham, you have been convicted of prostituting and subverting that safety net by perjury and theft. Over a substantial period of time you have willfully defrauded your fellow citizens. Your victims are the thousands of men, women and children across the nation whose bread supply is threatened by those who would terminate the Food Stamp Program and other governmental assistance. Your crime is particularly abhorrent because it provides the proof of thievery, fraud and abuse which the critics use to support their goal of dismantling the program. Because of your deeds, and the deeds of a small minority like you, thousands are placed in jeopardy. A failure to order an executed sentence and consecutive time would deprecate (sic) the seriousness of your offense....

It sentenced Iotha to 8 consecutive two-year sentences for theft and 5 consecutive two-year sentences for perjury, the theft and perjury sentences to run concurrently and concurrently with any other sentence being served, for a total continuous imprisonment of 16 years. Although Iotha's crimes were non-violent, he received a prison sentence normally reserved for rapists and armed robbers. This preamble leads to the double-edged question of whether this court on appeal may revise a sentence, and if so, when.

█ The judicial article of the Indiana Constitution as amended in 1970 grants the right to review and revise sentences of defendants in all criminal cases to both the Indiana Supreme Court,[2] and to the Indiana Court of Appeals.[3] Subsequent to the amendment, however, our supreme court in *Beard v. State,* (1975) 262 Ind. 643, 323 N.E.2d 216, and several other cases declined to exercise this newly-acquired power until a program of procedures for the orderly use thereof could be established. As of January 1, 1978, the supreme court promulgated Rules for Appellate Review of Sentences became effective. Since then, our supreme court has routinely reviewed sentences in appropriate cases according to the criteria set forth in those rules, *cf. Sandlin v. State,* (1984) Ind., 461 N.E.2d 1116; *Jones v. State,* (1983) Ind., 456 N.E.2d 1025; and *Blackmon v. State,* (1983) Ind., 455 N.E.2d 586. These rules provide

### SCOPE OF REVIEW

(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the

---

**2.** The Supreme Court shall have, in all appeals of criminal cases, the power to review all questions of law and *to review and revise the sentence imposed.* (Emphasis supplied.)
IND. CONST. art. 7, § 4.

**3.** [The Court of Appeals shall] exercise appellate jurisdiction under such terms and conditions as the Supreme Court shall specify by

rules which shall, however, provide in all cases an absolute right to one appeal and *to the extent provided by rule, review and revision of sentences* for defendants in all criminal cases. (Emphasis supplied.)
IND. CONST. art. 7, § 6. Also, see Smithburn, *Sentencing in Indiana: Appellate Review of the Trial Court's Discretion,* 12 VAL.U.L.REV. (1978).

offense and the character of the offender.

(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed.

▆▆▆▆ Also, the United States Supreme Court and our state supreme court each recognize the Eighth Amendment prohibits a punishment which is barbaric, or which is "excessive" in relation to the crime committed ... a punishment is "excessive" and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime.

*Coker v. Georgia,* (1977) 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982; *accord Norris v. State,* (1979) 271 Ind. 568, 575–576, 394 N.E.2d 144, 149–150. Prison sentences may be so "disproportionate" to the severity of the crime they constitute violations of the Eighth Amendment or art. 1, § 16 of our state constitution. *See Solem v. Helm,* (1983) 463 U.S. 277, 103 S.Ct. 3001, 3009–3010, 77 L.Ed.2d 637; *Norris,* 271 Ind. at 576, 394 N.E.2d at 150; *see generally,* Case Comment, Rummel v. Estelle: *Leaving the Cruel and Unusual Punishment Clause in Constitutional Limbo,* 15 VAL.U.L.REV. 201 (1980).

▆▆▆▆ Under the above authority, we perceive a two-step appellate procedure in this area. We will review a sentence on appeal only when at first blush the sentence imposed appears to be "disproportionate", that is, "manifestly unreasonable in light of the nature of the offense and the character of the offender." If after review we determine "no reasonable person could find such sentence appropriate to the particular offense and offender," we will revise the sentence on appeal so as to make such sentence appropriate.

▆▆▆▆ We are in as good a position as the trial court to make these determinations based upon the record before us in a proper case. All the material available to the trial court at time of sentencing is equally available to us on appeal. It is contained in the record. Further, the appellate process is uniquely suited to dispassionate consideration of the subject free of the everyday pressures of a trial courtroom. Although loath to review any sentence imposed by a trial court, we are constitutionally mandated to do so when, as in this case, it appears at first blush the sentence imposed was manifestly unreasonable.

When reviewing sentences, we have in mind the legislative provisions of IC 35–38–1–7 regarding aggravating and mitigating circumstances. Here, in aggravation, we note the following:

1. Iotha was convicted of possession of marijuana,

2. he is currently serving a concurrent five-year sentence for theft and conspiracy in Hamilton County,

3. charges are presently pending against him in Marion County for conspiracy, theft, forgery, and corrupt business influence.

However, in mitigation, we note the following:

1. He served two years in the armed forces of the United States, received a good driving award, and was honorably discharged.

2. He was stably employed for Kessler Garden Apartments as an exterminator and painter.

3. He was continuously and fully employed from 1963 to 1975 when he was injured in an automobile accident. Since the accident, he has worked at various part time jobs between hospitalizations.

4. Economically, he

   a. has lost his house in a foreclosure action,

   b. owes $400 in doctor bills, and

   c. owes $3,000 to Will Goering, a law suit concerning this debt is pending, and

d. no longer receives State aid and does not make enough money for family needs and restitution.

5. The Hamilton County Welfare Department was not interested in making sentencing recommendations to the court.

6. The Cunninghams (Iotha and Alberteen) have seven children ranging in age from 5 to 20 years. If a prolonged sentence is imposed upon Iotha, Alberteen will bear sole responsibility for the support of the six of them who are dependent. Further, two of the Cunningham children suffer respiratory problems, and another requires speech therapy.

Alberteen is currently unemployed due to the publicity surrounding this case. Although seeking additional employment and job training, there is a strong likelihood she will be unable to provide for the care and support of her children while serving 800 hours of public restitution. While 800 hours would be unreasonable if Alberteen were the sole support of her dependent children, we believe such sentence is not manifestly unreasonable if Iotha's sentence is revised to comport with the nature of the crimes for which he was convicted.[4]

▉▉▉▉ Under all of the circumstances, we determine the imposition of 16 years continuous imprisonment is manifestly unreasonable in view of the nature of the offenses for which Iotha was convicted and in further view of the character of the offender Iotha.[5]

▉▉▉ Accordingly, we revise Iotha's sentence as follows:

(1) the two-year sentences for each of Iotha's eight counts of theft shall run concurrently,

(2) the two-year sentences for each of the five counts of perjury shall run concurrently,

(3) the sentences for theft and perjury shall run concurrently with each other, and

(4) time served by Iotha from the date of his first incarceration pursuant to the filing of these charges to the date of this opinion shall be credited against the two years total imprisonment imposed.

Affirmed except as to the revision of sentence. Remanded to the trial court for imposition of sentence consistent with the findings contained in this opinion.

MILLER, P.J., concurs.

YOUNG, J., concurs with opinion.

YOUNG, Judge, concurring.

I fully concur in the majority's determination that the sentence imposed upon Iotha Cunningham is manifestly unreasonable. Even in the absence of such a determination, however, I would remand with instructions to impose concurrent sentences on the basis of clear error and bias on the part of the trial court in sentencing these defendants.

The trial court in imposing upon Iotha Cunningham consecutive sentences totalling sixteen years for the crime of illegally obtaining food stamps has adduced no grounds which may properly be considered in aggravation for this purpose. The court's discretion in determining whether sentences are to run concurrently or consecutively is not without limits. At a minimum, the sentencing court must be able to articulate facts in the case that support a finding of at least one of the statutory aggravating circumstances, before it may impose consecutive terms. *Taylor v.*

---

**4.** We note in passing the crimes charged as felonies of which Iotha was convicted in this case are prosecuted merely as misdemeanors frequently in similar cases throughout this state.

**5.** Although Iotha's convictions for possession of marijuana, for theft and conspiracy in Hamilton County, and the charges pending in Marion

County for conspiracy etc., cause us concern, we believe the mitigating circumstances outweigh those in aggravation in this case. Further, we are confident the trial court in Marion County will give appropriate consideration to all these factors if convictions result from the charges currently pending there.

**10**

*State,* (1982) Ind., 442 N.E.2d 1087. The sentencing record must contain a particularized statement of aggravating circumstances to show that determination of the sentence was based upon consideration of facts of the specific crime and the relation of the sentence imposed to objectives which will be served by that sentence. *Harris v. State,* (1981) Ind., 425 N.E.2d 112; *Washington v. State,* (1981) Ind., 422 N.E.2d 1218.

The trial court in the present case has failed entirely to cite particular facts which would justify the imposition of eight consecutive sentences. The rationale given at the defendants' sentencing hearing, quoted in its entirety by the majority, consists primarily of a sermon on the theme of food stamp fraud as a generalized social evil. This homily indicates the trial court's bias against these defendants and represents clearly inappropriate grounds for imposing consecutive sentences. The court's opinion as to the gravity of the evil threatened by this crime as a general matter can hardly be substituted for the legislative judgment regarding presumptive sentences. Nor does this statement afford individualized treatment of the defendant and his particular offense, as our decisions have consistently required. *Gambill v. State,* (1982) Ind., 436 N.E.2d 301; *Green v. State,* (1981) Ind., 424 N.E.2d 1014; *Page v. State,* (1981) Ind.App., 424 N.E.2d 1021.

The trial court likewise errs in attempting to justify this sentence by invocation of the aggravating circumstance defined by IND.CODE 35-4.1-4-7(c)(4) [repealed 1983 Acts, P.L. 311; see now IND.CODE 35-38-1-7(b)(4)]: "Imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crime." By its explicit terms, this factor may be considered in aggravation only for the limited purpose of outweighing mitigating factors when the judge would otherwise reduce or suspend the sentence. While it may be considered as one aggravating circumstance among others, this factor may not stand alone as grounds for enhancement, as our supreme court has indicated in *White v. State,* (1982) Ind., 433 N.E.2d 761.

In *White,* the defendant challenged the sentencing record wherein the trial court found two aggravating circumstances: defendant's history of criminal activity, and that a reduced sentence would depreciate the seriousness of the crime. The Court discussed the issue in the following terms:

> The record of the sentencing hearing discloses that the defendant was seeking a sentence shorter than the fixed ten-year prison term because of claimed mitigating circumstances relating to his family life, and work and school record.

> The trial court was acting within the bounds of its discretion in evaluating these circumstances in the particular case as applying only a negligible mitigating force, and in evaluating the aggravating circumstances in the balance as applying an upward force warranting an enhancement of the prison sentence beyond the fixed term.

433 N.E.2d at 763.

This analysis, relying on the defendant's allegation of mitigating circumstances and cast in terms of the *countervailing* weight of the aggravating factors, comports with the unequivocal language of the statutory criterion. A contrary analysis would allow the judiciary to substitute its judgment for that of the legislature; in the absence of any other aggravating circumstances, it is absurd to argue that the presumptive sentence prescribed by the legislature inherently depreciates the seriousness of the offense. I thus would not read IC 35-4.1-4-7(c)(4) as authorizing the trial judge to impose consecutive sentences solely on this basis.

Moreover, the trial court in citing this aggravating factor has merely recited the statutory language. Our courts have repeatedly held that the trial court's statement of reasons for enhancing a sentence or imposing consecutive terms is inadequate where, as here, the court merely repeats the conclusory language of the statutory criterion and expresses a general

belief that the sentence appears to be appropriate under the circumstances. *Gambill, supra; Green, supra; Page, supra.*

I also detect error in the trial judge's refusal to consider mitigating circumstances in this case. IND.CODE 35–4.1–4–7(a) [repealed 1983 Acts, P.L. 311; see now IND.CODE 35–38–1–7(a)] mandates that the court consider the nature and circumstances of the particular crime, as well as the character and condition of the defendant. Enhancement of a sentence or imposition of consecutive terms requires that the trial court identify all significant mitigating and aggravating circumstances. Our supreme court has recently reiterated this requirement, indicating that failure to find either when clearly supported by the record constitutes error. *Jones v. State,* (1984) Ind., 467 N.E.2d 681; *see also Page, supra.* As the majority notes, the record in this case reveals a number of statutorily-defined mitigating circumstances directly pertinent to the sentencing decision and which weigh so heavily in mitigation that the trial court could not properly disregard them.

These statutory grounds alone would, of course, require that we remand this cause. Customarily, we would remand for resentencing in conformity with the statutory guidelines. But where as in the present case the trial court has demonstrated bias against the defendants, as witnessed by his statement at the sentencing hearing and by the grossly disproportionate sentence imposed, we may properly remand with instructions to impose the presumptive term or concurrent sentences. *See Gambill, supra* (trial judge's demonstration of bias in attempting to enhance defendant's sentence for involuntary manslaughter on grounds that the jury should have convicted him of murder necessitated remand for resentencing to presumptive term). On the authority of *Gambill,* independent of our conclusion that the sentence imposed on Iotha Cunningham is manifestly unreasonable, I would remand with the instructions adopted by the majority.