Steven HUNTER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49A04–9502–PC–33.

Court of Appeals of Indiana.

Oct. 25, 1995.

Transfer Denied Jan. 9, 1996.

Susan K. Carpenter, Public Defender, Victoria Christ, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Steve L. Hunter appeals the denial of his petition for post-conviction relief. We affirm.

### ISSUES

I. Whether Hunter's sentence was based on materially untrue assumptions.

II. Whether Hunter received effective assistance of counsel at trial and on appeal.

III. Whether Hunter's sentence was manifestly unreasonable.

### FACTS

On January 24, 1984, Steve L. Hunter entered the Indiana National Bank branch located at 62nd Street and Michigan Road in Indianapolis. Hunter, who was not wearing a mask, asked bank teller Phyllis Jones about the possibility of opening a savings account. Jones asked Hunter to have a seat; however, Hunter walked into bank manager Dewey Cain's office, pointed a handgun at Cain and informed him that a robbery was occurring. Hunter then put on a ski mask. Shortly thereafter, Hunter's two accomplices, armed with shotguns, burst into the bank. Hunter told bank secretary Lori Myers not to touch any buttons or alarms or he would "blow [her] head off." (R. 501). Hunter ordered bank manager Dewey Cain to enter the tellers' stations and to remove money from the tellers' drawers. Cain removed approximately $14,000.00 and placed it in a pillowcase provided by Hunter. Cain also placed a dye pack and "bait money" in the pillowcase. When the "bait money" was removed from the teller's drawer, the removal set off an alarm and activated the bank's cameras.

As Hunter and the two other men were leaving the bank, one of the other men demanded that bank customer Robert Cohen give the man Cohen's car keys. Further, Hunter forced Douglas Gordon, the bank's assistant manager, at gunpoint, to give him his car keys and to proceed outside with the three men. Gordon exited the bank ahead of the three men and walked to his car without looking behind him. When Gordon realized that the three men were no longer behind him and were getting into a black van, Gordon ran to the rear of the bank building. The three men got into the van with its engine running and drove off in it. Apparently, the van was in bad shape and could not be driven faster than 45 miles per hour.

Shortly thereafter, seventy-eight year-old Bernard Lee was driving his car on 61st Street when the black van approached him from the rear. The van's driver rammed and bumped Lee's vehicle with the van, and Lee stopped. The three men jumped out of the van and ordered Lee out of his car. One of the men stood at Lee's door with a shotgun. Another man stood at the front of Lee's car with a shotgun, and the third man stood near the van with a handgun. When Lee got out of the car, one of the men hit Lee on the back of the neck with a shotgun. Lee stumbled to the other side of the street and the two men with the shotguns got into Lee's car and yelled at Lee to get back in the car. Lee told the men "to go you know where," and started running down the street. (R. 658). Lee ran into a neighbor's yard and saw the three men get back into the van and drive away. Lee's neighbor saw Lee in the driveway, and Lee and his neighbor walked back to where the car had been taken from Lee and found the car had been moved. Apparently, the fleeing bank robbers had driven the car into a ditch while trying to turn the car around.

Seventy-eight year-old Wilford Clark was driving on Cold Springs Road when he encountered the black van blocking the road. Clark stopped, and three men with guns approached his car. One of the men put a handgun to Clark's head and told Clark to get out of his car or the man would blow him

away. Clark got out of the car, and the three men drove away in it.

Hunter was subsequently charged with and convicted by jury of five counts of robbery, all class B felonies, and one count of confinement, also a class B felony. The six convictions were for the following:

1. Robbery of Dewey Cain by taking U.S. currency;
2. Robbery of Douglas Gordon by taking Gordon's car keys;
3. Confinement of Douglas Gordon;
4. Robbery of Robert Cohen by taking Cohen's car keys;
5. Robbery of Bernard Lee by taking an automobile; and
6. Robbery of Wilford Clark by taking an automobile.

Hunter received 20 years on each count, all sentences to run consecutively.

Our supreme court affirmed Hunter's convictions on direct appeal. *Hunter v. State* (1986), Ind., 492 N.E.2d 1067. The United States District Court granted Hunter's habeas corpus petition; however, the Seventh Circuit United States Court of Appeals reversed, finding that "[g]iven the overwhelming weight of the evidence against Hunter, the failure to give Hunter's requested 'no adverse inference' instruction was harmless beyond a reasonable doubt, thus no significant value [was] at stake." *Hunter v. Clark* (1991), 7th Cir., 934 F.2d 856, 864–65, *cert. denied,* (1991) 502 U.S. 945, 112 S.Ct. 388, 116 L.Ed.2d 338.

On January 7, 1993, Hunter, acting *pro se,* filed a petition for post-conviction relief, and on August 9, 1994, Hunter, by counsel, filed an amended post-conviction relief petition. The amended petition was denied on October 7, 1994, and Hunter now appeals that denial.

## DECISION

 A petitioner bears the burden of establishing grounds for post-conviction relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Weatherford v. State* (1993), Ind., 619 N.E.2d 915, 917, *reh'g denied.* In reviewing the judgment of a post-conviction court, we consider only the evidence and reasonable inferences support-ing its judgment. *Id.* The post-conviction court acts as the sole judge of the evidence and the credibility of witnesses. *Id.* Accordingly, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court to prevail on appeal from a denial of post-conviction relief. *Id.*

## I. *Materially Untrue Assumptions*

[4] Hunter argues that he was "sentenced on the basis of materially untrue assumptions in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Sections Twelve and Twenty–Three of the Indiana Constitution." Hunter's Brief, p. 19. Specifically, Hunter contends that the "trial court stated in aggravation that Hunter had been convicted of Armed Robbery and two charges of Visiting a Common Nuisance." Hunter's Brief, p. 19. According to Hunter, "[t]hese facts were not accurate because Hunter was acquitted of the Robbery charge . . . and was only convicted of one count of Visiting a Common Nuisance." Hunter's Brief, p. 19–20. In support of his argument, Hunter directs us to: 1) a certified copy of the verdict issued by the jury in CR 81–86C finding that Hunter was not guilty of robbery which Hunter submitted at his post-conviction relief hearing, and 2) Hunter's testimony at the post-conviction relief hearing that he was only charged and convicted one time of visiting a common nuisance. The State responds that the trial court never stated in aggravation that Hunter had been *convicted* of robbery. The State further points out that Hunter: 1) did not testify which visiting a common nuisance conviction in his presentence report was inaccurate, and 2) provided no documentary evidence regarding the inaccuracy of the presentence report. Thus, according to the State, the post-conviction court was not required to believe Hunter's testimony absent more specific information. We agree with the State.

### A. *Robbery*

Our review of the record reveals that the trial court never stated that Hunter had been

convicted of robbery. The trial court's written sentencing statement refers to "Deft's criminal history and criminal activity." (R. 130). The trial court's oral sentencing statement referred to Hunter's "prior criminal record." (R. 1236). During the sentencing hearing, the trial court read into the record the legal history contained in Hunter's presentence report. The presentence report entry which Hunter contends supports his argument provides in pertinent part as follows:

> 2–16–81 MCSD Robbery, Carrying a Hand Gun Without a License (CR81–86C) 1 year, exec. 5–21–82.

> As a man was attempting to put gasoline in his vehicle, the defendant pulled a gun on him and demanded his money. After taking $70.00 from the victim, the defendant was observed by the victim running to a parked car and driving away. The police stopped the defendant's car and found the gun and money on him. The victim made a positive identification as to the identity of the defendant.

> At a jury trial, the defendant was found guilty of Carrying a Handgun Without a License (Class A misdemeanor). On May 21, 1982 he received a one year executed sentence.

(R. 119).

This entry does not state that Hunter was convicted of robbery. Rather, it appears that Hunter was initially *charged* with robbery and carrying a hand gun without a license. However, Hunter was *convicted* of only carrying a handgun without a license, and he received a one year sentence. Further, Hunter's presentence report also provides in pertinent part as follows:

> The defendant has two convictions for minor Misdemeanors and in 1981 received a Felony Conviction for Theft, and in 1982 was convicted on a Misdemeanor for Carrying a Handgun Without a License. On an additional Armed Robbery charge he was found not guilty, this charge was part of the same case involving the Carrying a Firearm Without a License.

(R. 125). The trial court did not state in aggravation that Hunter had been convicted of armed robbery.

### B. *Visiting a Common Nuisance*

Our review of Hunter's presentence report reveals that, according to the report, Hunter was twice convicted of visiting a common nuisance.[1] Hunter now contends that he was only convicted once for that offense. The sole evidence offered in support of Hunter's contention is Hunter's testimony. As the State points out, Hunter has failed to offer any documentary evidence in support of his contention, distinguishing the facts of his case from those in *Brooks v. State* (1990), Ind.App., 555 N.E.2d 1348, wherein this court reversed the trial court's denial of Brooks' petition for post-conviction relief.

In the *Brooks* case, Brooks contended that "two of the aggravating circumstances articulated by the trial court in support of [his] enhanced and consecutive sentences were based on erroneous information." *Id.* at 1349. Brooks directed us to the trial court's finding of aggravating circumstances which provided as follows:

> COURT: Alright, I find aggravating circumstances in this case. Mr. Brooks' prior criminal record is an aggravating circumstance. The fact that two of those prior offenses were drug offenses, I am convinced that Mr. Brooks was, in fact, on Federal Parole at the time he was arrested in this case.

> MR. BROOKS: No I wasn't. This is erroneous.

*Id.* at 1349. According to Brooks, the trial court's finding that he was on parole was erroneous. In support of his contention, Brooks submitted an uncontested affidavit from his federal parole officer, which included a Justice Department Notice of Discharge revealing that Brooks was discharged from parole one year before his arrest for the instant offense. This court found that Brooks had a right to have his sentence based on accurate information, and because the post-conviction court did not make a specific finding that Brooks was not on parole,

---

1. 11–21–80 IPD Visiting a Common Nuisance Fine/costs, 30 days jail, susp., 1–20–81.

2–15–81 MCSD Visiting a Common Nuisance $45 in fines/cost, 2–15–81.

we held that Brooks was entitled to a new sentencing hearing.

We further note that, in contrast to the facts before us, Brooks objected at the sentencing hearing to the trial court's findings. Here, Hunter mentioned nothing about the visiting a common nuisance convictions until his post-conviction hearing despite the fact that he: 1) had an opportunity to review the presentence report before the sentencing hearing, 2) corrected other inaccuracies in the presentence report during the sentencing hearing,[2] and 3) heard the judge read the presentence report into the record at the sentencing hearing.

Hunter failed to convince the post-conviction court that his sentence was based on materially untrue assumptions, and he has failed to convince us that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. The post-conviction court did not err in failing to grant Hunter relief on this issue.

## II. *Effective Assistance of Counsel*

■ Hunter argues that both trial and appellate counsel were ineffective. Ineffective assistance of counsel claims are judged by the standard set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291, 1294. The effectiveness of appellate counsel is judged by the same standard as is applied to trial counsel. *Mato v. State* (1985), Ind., 478 N.E.2d 57, 62. A claim of ineffective assistance, as violating the Sixth Amendment of the U.S. Constitution, is subject to a two-part test. In order to prevail, Hunter must show that: 1) his counsel's performance fell below an objective standard of reasonableness, and 2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *See, Mott v. State* (1989), Ind., 547 N.E.2d 261, 263.

**2.** Hunter requested that a fleeing and arresting charge be stricken because the presentence report showed no affidavit. He further stated that

## A. *Trial Counsel*

Hunter argues that his trial counsel was ineffective because counsel failed to: 1) "object to or strike inaccuracies in [Hunter's] Presentence Investigation Report," 2) "object to the court's use of the inaccurate Presentence Investigation Report and failed to include these errors in the Motion to Correct Errors," and 3) "call witnesses who were available to testify at sentencing." Hunter's Brief, p. 18. We disagree.

■ Because Hunter has failed to convince us that his sentence was based on materially untrue assumptions, all ineffective assistance of trial counsel arguments regarding the "inaccurate" presentence report must fail. Further, because Hunter has failed to explain how the result of the proceedings would have been different if the witnesses would have testified at his sentencing hearing, that argument must fail as well. Hunter was not denied effective assistance of trial counsel.

## B. *Appellate Counsel*

Hunter next argues that his appellate counsel was ineffective because counsel failed to: 1) "investigate and consult with Hunter sufficient to learn that the sentence was based on inaccurate information," Hunter's Brief, p. 27; 2) "verify the accuracy of the Presentence Investigation Report;" 3) "allege trial counsel ineffective on direct appeal" regarding the presentence report; 4) "raise as fundamental error that Hunter was sentenced on materially untrue assumptions; and 5) seek rehearing "when these untruths were relied on in the direct appeal opinion." Hunter's Brief, p. 18–19. We disagree.

Again, because Hunter has failed to convince us that his sentence was based on materially false assumptions, all his appellate ineffective assistance of counsel arguments must fail. Hunter was not denied the effective assistance of appellate counsel, and the post-conviction court did not err in failing to grant Hunter relief on the ineffective assistance of counsel arguments.

he had been "layed-off," not terminated from the Indianapolis Rubber Company. (R. 1219).

III. *Manifestly Unreasonable*

■ Hunter next argues that his sentence was manifestly unreasonable. In *Cunningham v. State* (1984), Ind.App., 469 N.E.2d 1, *reh'g denied, trans. denied,* this court formulated the following procedure for reviewing sentences:

We will review a sentence on appeal only when at first blush the sentence imposed appears to be 'disproportionate', that is, 'manifestly unreasonable in light of the nature of the offense and the character of the offender.' If after review we determine 'no reasonable person could find such sentence appropriate to the particular offense and offender,' we will revise the sentence on appeal so as to make such sentence appropriate.

*Id.* at 8.

Here, at first blush, a 120 year sentence for five counts of class B felony robbery and one count of class B felony confinement appears to be manifestly unreasonable. Our blush deepens as we review the record and observe Hunter's age at the time of the crime, the type of his prior convictions, and the fact that Hunter did not beat or brutalize any of the victims.[3] In no way is our review of the record meant to diminish the seriousness of the offense or second guess the trial court or our supreme court, which has already addressed the issue of whether the trial court abused its discretion when it sentenced Hunter. However, when we peruse the Indiana Constitution, we note Article I, § 18, where the framers provide that:

The penal code shall be founded on the principles of reformation, and not vindictive justice.

Article I, § 16 further provides that:

Excessive fines shall not be imposed. Cruel and unusual punishments shall not be inflicted.

Our supreme court has noted that these provisions, read together, "reveal an underlying concern in our State Bill of Rights that, notwithstanding society's valid concerns with protecting itself and providing retribution for serious crimes, the State criminal justice system must afford an opportunity for rehabilitation where reasonably possible." *Fointno v. State* (1986), Ind., 487 N.E.2d 140, 144. With these principles and our standard of review in mind, we turn to Hunter's character and the nature of the offense. *See Cunningham, supra;* Ind.Appellate Rule 17(B).[4]

Hunter's criminal history was outlined as follows in Hunter's presentence report:

1. *Hunter's Age*—19

*Date of Event*—9–3–76

*Offense*—Armed Robbery, Assault with Intent to Kill

*Disposition*—Armed Robbery; Nolle 9–30–76

Assault with Intent to Kill; Nolle 9–30–76

[Narrative reveals that three people were involved in a quarrel; two subjects had weapons (does not indicate Hunter had a weapon); the case was nolled within four weeks.]

2. *Hunter's Age*—20

*Date of Event*—6–25–77

*Offense*—Disorderly Conduct

*Disposition*—8–10–77; 60 days suspended; fines and costs

[Narrative reveals that four subjects were fighting among themselves.]

3. *Hunter's Age*—23

*Date of Event*—11–21–80

*Offense*—Visiting a Common Nuisance

*Disposition*—1–21–81; 30 days suspended; fines and costs

---

3. We are aware that one of the victims was struck on the back of the neck with a shotgun; however, he was not injured. Further, the record is unclear as to which of the three men, Hunter or one of his accomplices, struck the victim.

4. Ind.Appellate Rule 17(B) provides as follows: (1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which the sentence was imposed.

[Narrative reveals that thirteen people were arrested for alleged gambling.]

4. *Hunter's Age*—23

*Date of Event*—2–15–81

*Offense*—Theft

*Disposition*—6–4–81; 2 years suspended; 2 years probation; restitution; fines and costs.

[Narrative reveals that Hunter exerted unauthorized control over unemployment payments.]

5. *Hunter's Age*—23

*Date of Event*—2–15–81

*Offense*—Visiting a Common Nuisance

*Disposition*—2–15–81; fine and costs.

[No narrative.]

6. *Hunter's Age*—23

*Date of Event*—2–16–81

*Offense*—Robbery; Carrying a Handgun Without a License

*Disposition*—5–21–82; Convicted by jury of Carrying a Handgun Without a License; one year executed.

7. *Hunter's Age*—24

*Date of Event*—3–1–82

*Offense*—Speeding

*Disposition*—3–3–82; Fines and costs

[No narrative.]

8. *Hunter's Age*—26

*Date of Event*—5–11–83

*Offense*—Disorderly Conduct

*Disposition*—6–21–83; Fines and costs

[No narrative.]

9. *Hunter's Age*—26

*Date of Event*—10–11–83

*Offense*—No automobile registration

*Disposition*—11–14–83; License suspended

[No narrative.]

Collectively, at the time of the instant offense, Hunter had one felony conviction for theft and five misdemeanor convictions.[5]

Further, our review of the nature of the offense reveals that Hunter did not inflict bodily injury on any of the victims. Our supreme court discussed the relevance of this consideration in *Fointno, supra*:

> While the absence of such conduct does not in *any* way lessen the severity of the crime as such, and thus does *not* constitute a mitigating factor justifying a reduction or suspension of the presumptive sentence, the presence of aggravated brutality distinguishes the defendants who commit such acts and justifies a substantially aggravated term where it is present. We do not by this observation debase the seriousness of these crimes themselves. Nor do we suggest that the absence of collateral brutality prevents the imposition of an enhanced sentence. Nevertheless, a rational sentencing scheme should punish more severely those who brutalize the victims of their crimes.

*Fointno*, at 148.

In *Fointno*, the victim had taken her seven year-old daughter to the emergency room for treatment of an earache. The victim returned to her van at approximately 2:00 a.m. after filling a prescription for her daughter. Fointno approached the van, pointed a pistol at the victim, and demanded to be let inside the van. The victim acquiesced, and Fointno drove the van to a nearby apartment complex parking lot. Fointno instructed the victim to tell her child to lie on the back seat and turn her head away. During the following two hours, Fointno repeatedly required the woman to submit to a variety of sexual acts. He also took $42.00 from her, and implied that he would harm her if she reported the as-

---

**5.** In Hunter's direct appeal, Justice Pivarnik summarized Hunter's criminal history as follows:

[A]rmed robbery, assault with intent to kill, two counts of disorderly conduct, two counts of visiting a common nuisance, three counts of theft, robbery, carrying a handgun without a license, speeding, driving without an auto registration, and the instant offenses.

*Hunter, supra*, at 1071. We observe that Justice Pivarnik did not distinguish between Hunter's convictions and acquittals. Further, the summary tells us nothing about the circumstances surrounding each event.

sault to authorities. Fointno was eventually sentenced to 104 years for one count of class A felony rape, three counts of class A felony criminal deviate conduct, two counts of class B felony confinement, one count of class B felony robbery, and one count of class D felony intimidation. On appeal, Fointno argued that his sentence was manifestly unreasonable in light of his background and the facts and circumstances of the case. After reviewing the record, our supreme court found that Fointno, who did not have a previous criminal record, had served as an Anderson fireman for 10 years. Our supreme court further noted that Fointno "did not beat, wound or otherwise severely brutalize the victims except as is inherent in the commission of the crimes." *Id.* at 148. In conclusion, our supreme court found that Fointno's 104 year sentence was manifestly unreasonable. Accordingly, the supreme court remanded the case to the trial court and instructed it to modify Fointno's sentence to 80 years.

We further note the trial court's statement at Hunter's sentencing hearing:

[A]s far as I am concerned, [these defendants] will only be rehabilitated by old age. If, in fact, they are rehabilitated at an earlier date I'm sure the Department of Correction or Legislature will figure out ways to let them get out earlier than their two (2) for one (1) time.... It is also this court's determination that these are the type of Defendants that uh, until there is some other type of incarceration which brings about rehabilitation that they will always be the type of individual they are and will always commit these kind of offenses as long as they are on the street.... So I'll now leave the responsibility upon the Department of Corrections and the State Legislature to come up with whatever they need to do to rehabilitate this type of individual. I only know of rehabilitation through old age.

(R. 1243–44).

Lastly, we note that the record reveals that Hunter and the prosecutor had engaged in plea bargaining, and the State had offered Hunter a 40 year sentence in exchange for a plea of guilty to all charges. We presume that the prosecutor had considered the seriousness of Hunter's involvement in this case when it offered him the 40 year sentence. We note that after Hunter exercised his constitutional right to trial by jury, he received a sentence three times harsher than what he would have received if he had accepted the plea bargain.

Although we are bothered by the facts which were revealed during our review of the record, our supreme court found "no error in [Hunter's] sentence." *Hunter, supra,* at 1071. Because this issue was decided in Hunter's direct appeal, it is res judicata, and it is not subject to consideration for post-conviction relief by this court. *See Grey v. State* (1990), Ind., 553 N.E.2d 1196, 1199–1200, *reh'g denied; Tacy v. State* (1994), Ind.App., 641 N.E.2d 57, 63, *trans. denied.*

Affirmed.

CHEZEM, J., concurs.

RILEY, J., concurs in result.